249 So.2d 611

### STATE LICENSING BOARD FOR the HEALING ARTS et al.

v.

### ALABAMA BOARD OF PODIATRY et al.

**3 Div. 464.**

Supreme Court of Alabama.

June 10, 1971.

Jasper B. Roberts, Asst. Atty. Gen., for appellants.

Matranga, Hess & Sullivan, Mobile, Frank J. Mizell, Jr., Montgomery, for appellees.

**134**

HARWOOD, Justice.

On 29 October 1969, Douglas O. Benton, as Executive Officer of the State Licensing Board for the Healing Arts, sent to Dr. Paul D. Wilton in Mobile, the following letter:

"You are hereby summoned to appear in person or by counsel or both before the State Licensing Board for the Healing Arts on November 20, 1969, at 11:00 A.M., to show cause why your license to practice Chiropody should not be revoked, according to violation of Title 46–257, Section 21(9), Code of Alabama.

"The hearing to be held in Room 209, Public Safety Building, 500 Dexter Avenue, Montgomery, Alabama."

On 18 November 1969, Dr. Wilton, a licensed Podiatrist, and a member of the Alabama Board of Podiatry, together with the Board of Podiatry, and the other members thereof, acting individually and as members of the Board, filed a bill in the Circuit Court of Montgomery County seeking a temporary injunction restraining Benton, and the State Licensing Board for the Healing Arts from holding the hearing set for 20 November 1969. The bill further prayed that upon final hearing that the temporary restraining order be made permanent. It was further prayed that the Chancellor issue a decree declaring that the Alabama Board of Podiatry has exclusive jurisdiction governing the conduct of podiatrists in Alabama and in the matter of suspending or revoking the licenses granted to podiatrists. It was further prayed that after hearing the Chancellor declare that podiatrists licensed to practice their profession in Alabama are lawfully entitled to prescribe medication for treatment of any local ailment of the human foot.

On the day this bill was filed, 18 November 1969, the Chancellor issued an order temporarily restraining the Board for the Healing Arts from holding the hearing set for 20 November 1969. This restraining order was not, however, served upon the Board for the Healing Arts or on Benton prior to 20 November 1969, and on that day the Board for the Healing Arts issued an order revoking Dr. Wilton's license as a podiatrist. Dr. Wilton, relying upon the temporary injunction prohibiting the hearing, did not appear at the hearing.

Thereafter Dr. Wilton filed on the law side of the Circuit Court of Montgomery County a petition for a writ of mandamus requiring the Board for the Healing Arts to vacate its order revoking his license, and the petition was granted.

On that same day the bill filed by the members of the Board of Podiatry was submitted to the Chancellor. The Board of Podiatry submitted upon the bill of complaint a stipulation of facts, and the affidavits of Dr. Gordon Lee Spafford, M.D., Dr. John Wayne Lowery, M.D., and Pierre Pelham. The Board for the Healing Arts submitted upon the stipulation of facts.

The facts as stipulated by the parties show that it is the contention of Dr. Wilton, and the Board of Podiatry, who will hereinafter be referred to as the complainants, that podiatrists are under the applicable statutes authorized to prescribe medicine internally as well as externally for treatment of local ailments of the human foot, while it is the contention of the Board for the Healing Arts, hereinafter referred to as the respondents, that under such statutes podiatrists are authorized to prescribe medicines to be applied externally only for treatment of ailments of the human foot; that prior to the commencement of this action Dr. Wilton had prescribed and administered non-narcotic analgesics, oral anti-infectives or antibiotics,

antihistamines, anti-inflammatory medica-cation and muscle relaxants, some for in-ternal use and some for external use, and all in connection with and for treatment of local ailments of the human foot. In Dr. Wilton's affidavit, made a part of the stipulation of facts, it is shown that the drugs to be taken internally were pre-scribed or administered to prevent infec-tion or pain following authorized surgery on the foot, or were administered prepara-tory to such surgery.

The facts surrounding the proceedings by the respondents relative to the hearing on 20 November 1969, were stipulated, but since these facts have already been set out, we will not repeat them.

It was further stipulated that on 20 Sep-tember 1969, the Board of Podiatry had considered charges made against Dr. Wil-ton for prescribing internal medicines for the treatment of local ailments of the hu-man foot and that said Board, after a hear-ing, had found that Dr. Wilton had not exceeded the lawful scope of his practice of podiatry in writing such prescriptions. Dr. Wilton, being a member of the Board, had recused himself during this hearing.

In his affidavit, made a part of the stip-ulation of facts, Dr. Wilton asserted that after three years of undergraduate work at Indiana University, he enrolled in the Chicago College of Podiatry from which he graduated in 1954. As a student he was trained in pharmacology, medicine, materia medicine, and therapeutics, and completed background work in such courses as bio-chemistry, microbiology, etc. Since gradu-ation he has regularly attended seminars at least twice a year sponsored by national, regional, and state podiatric associations. These seminars consist of lectures by med-ical doctors, qualified podiatrists, pharma-cists, physical therapists, and personnel of the United States Public Health Service. He also subscribes to various journals in the field of podiatry, and pharmacology.

He has been a member of the State Board of Podiatry since its creation.

Dr. Wilton's affidavit further asserted that the Alabama Board of Podiatry on 20 September 1969, heard charges against him for prescribing internal medicine and it was held by the Board that the prescrip-tions were for the treatment of local ail-ments of the human foot, and were per-missible in the lawful practice of podia-try pursuant to the statutes covering such practice.

Dr. Wilton described his treatment of two cases specifically, namely Mr. Bousson, and Mrs. McNeil.

In Mr. Bousson's case he had surgically removed an ulcerated callus from Mr. Bousson's left big toe. He had then given him prescriptions for an anti-inflammatory enzyme to prevent swelling, an antibiotic to prevent infection, and a medication to reduce pain following the operation.

In Mrs. McNeil's case he had prescribed medication to be taken internally to im-prove the impaired circulation in her feet, preparatory to surgery for the removal of several hard and soft corns. At the same time he gave her a prescription for tablets to be taken after the surgery to reduce possible swelling or inflammation. Actual-ly neither of these prescriptions were filled.

Gordon Lee Spafford, M.D., stated in his affidavit that he had read Dr. Wilton's affidavit, and that the prescriptions issued by Dr. Wilton to Mr. Bousson and Mrs. McNeil were, in his opinion, the same or similar treatment as that which he or any medical doctor would have followed in the cases. Further, the medicines prescribed by Dr. Wilton were not unreasonable for treatment of the ailments of the human foot.

John Wayne Lowery, M.D., gave an af-fidavit substantially similar to that given by Dr. Spofford.

The Chancellor made a rather extensive finding of facts. He found that in addi-tion to the standard podiatry examination already mentioned, that the course of study in a four-year college of podiatry covers,

among a number of other subjects, anatomy, dermatology, pharmacology, physiology, microbiology, orthopedics, medicine, roentology, physical medicine, neurology, and surgery.

The Chancellor found that Dr. Wilton had prescribed and administered medicines to be taken orally, and that such was reasonable and proper for the purposes contemplated.

The Chancellor thereafter decreed that a person duly licensed to practice podiatry in this state has the right under Section 297(22p), Title 46, Code of Alabama 1940, as amended, to prescribe and administer drugs for both external and internal use in connection with treatment of local ailments of the human foot, and that his license is not subject to revocation by the Board for the Healing Arts for so doing.

■ In 1959 by Act No. 106, Acts of Alabama 1959, effective 1 January 1960, there was created a State Licensing Board for the Healing Arts. The Board is composed of the Secretary of State, the Attorney General, and the Superintendent of Education. The Board was given the exclusive power to issue all licenses for the practice of the healing arts. Various subboards for the examination of applicants for licenses in different fields of the healing arts have been set up, and upon certification of the appropriate branch board as to the qualifications of an applicant for a license in a particular field, the Board for the Healing Arts issues a license to such certified applicant authorizing him to practice in his particular field of the healing arts.

Since the operative date of the Act creating the Board for the Healing Arts, several additional Acts and amendments have been passed. These now appear in the pocket parts of our Code, and for convenience will hereinafter be referred to by the designation in the Code rather than Act numbers, since reference to the various Acts may be found at the conclusion of the appropriate Code sections.

In 1967 an Act was passed, effective as of 1 October 1967, relating to the examination, licensing, qualifications, and regulation of those persons seeking to practice podiatry in this state. See Article 6, Secs. 297(22p) through 297(22ii), Title 46, Code of Alabama 1940, (pocket part).

In the definition section of Article 6, Section 297(22p), appears the following:

"As used in this article, the term 'podiatry' means the diagnosis and treatment of disorders of the human foot. The 'practice of podiatry' is the diagnosis and medical or surgical or mechanical or manipulative or electrical treatment of any local ailment of the human foot. 'Diagnosis' is the process of ascertaining a disease or ailment by its general symptoms. 'Medical treatment' is the application to or prescription for the foot of pads, adhesives, felt, plaster, or any medicinal agency. 'Surgical treatment' is the use of any cutting instrument to treat a disease, ailment, or condition, but only by local treatment extending no deeper than the true skin."

"Mechanical treatment," "Manipulative treatment," and "Electrical treatment" are also defined, but such definitions are immaterial to this review.

Sub Sections (22r), (22s), and (22t) of Section 297 create a State Board of Podiatry, and set forth the procedure for the board meetings, and define the duties and authority of the board.

Section 297(22w) and 297(22x) provide for the qualifications of an applicant and for his examination by the State Board of Podiatry.

Section 297(22w) requires that:

"Such applicant must be 21 years of age or over, a citizen of the United States and of good moral character, must be a graduate of a four-year college of podiatry recognized by the American podiatry association that requires at least two years of collegiate study prior to

enrollment therein, and must be able to pass the standard examination prescribed by the state board of podiatry. * * * Such standard examination shall consist of tests in practical, theoretical and physiological podiatry, in the anatomy and physiology of the human foot, and in pathology as applied to podiatry. Such standard examination shall not be out of keeping with established teachings and adopted textbooks of recognized schools of podiatry."

Section 297(22ee) authorizes the State Board of Podiatry to suspend or revoke a license issued to any person for the practice of podiatry for various enumerated causes. It further provides that a copy of the charges must be in writing, verified by oath, and served upon accused at least ten days before a hearing.

Section 297(22ff) prohibits a podiatrist from practicing medicine, and further provides that:

"No person who qualifies for a certificate or license under this article shall be subject to examination by the state board of medical examiners."

It is appropriate to note here that prior to the creation of the Board of Podiatry, there was in Section 259, Title 46, Code of Alabama 1940, relating to the examination of applicants for a license to practice medicine by the State Board of Medical Examiners, a provision that applicants who are to diagnose only local ailments of the human foot and to treat such ailments only locally, extending treatment no deeper than the true skin and using only local anesthetics in connection with such treatments, need possess only such qualifications and to submit to examinations only, as in the judgment of the State Board of Medical Examiners, are necessary to the protection of the public health. Upon passing such examination, the applicant was entitled to be licensed as a chiropodist and thereby authorized to diagnose and treat local ailments of the human foot, but only by local treatment.

This same provision now appears substantially unchanged as Section 259, Title 46, Article 1, which Article pertains to the Board for the Healing Arts, and in Section 271, Title 46 of the same Article, it is provided that the license of a physician, osteopath, or chiropodist may be revoked by the Board of Medical Examiners for enumerated causes, and that such accused shall have twenty days written notice of the time and place of hearing, which notice shall be accompanied by a copy of the complaint. Podiatrists are not mentioned in these provisions.

While chiropody and podiatry are akin. in that both are concerned with ailments of the human foot, yet the educational and. training qualifications are not the same. By statute a podiatrist must be a graduate of a four-year college of podiatry recognized by the American Podiatry Association, preceded by at least two years of collegiate study. The record does not show the qualifications essential to be licensed as a chiropodist and the statute merely provides that an applicant must possess such qualifications as in the judgment of the Board of Medical Examiners is necessary for the protection of the public health.

It was stipulated by the parties, and so found by the court below that the practice of podiatry is a learned profession.

The portions of Section 297(22p) pertinent to this review have been hereinabove set out. Of particular significance are those portions of Section 297(22p) defining the "practice of podiatry" as being "the diagnosis and medical or surgical * * * treatment of any local ailment of the human foot," and further defining "medical treatment" as being "the application to or prescription for the foot of pads, adhesives, felt, plaster, or any medicinal agency."

Admittedly the phraseology of this provision is somewhat inept. It is to be noted, however, that the phrase "application to or prescription for the foot," is in the disjunctive. We deem that the words "application to" must refer to the application

to the foot of pads, adhesives, felt, and plaster. Certainly no prescription would be necessary for this procedure. It is further to be noted that the phrase "or any medicinal agency" is also in the disjunctive. It must be deemed to refer back to the words "prescription for the foot." As so construed, the defining provision as to prescriptions would read: "Medical treatment * * * is the prescription for the foot of * * * any medicinal agency."

We have not found "medicinal agency" defined in any medical dictionary available to us. Clearly the term must be synonymous with "medicine" or "medicinal" as those terms are used to connote drugs.

In Dorland's Illustrated Medical Dictionary, 24th Ed., "medicinal" is defined as: "1. Having healing qualities. 2. Pertaining to a medicine or to healing."

The word "medicine" is defined in that same dictionary as: "1. Any drug or remedy. 2. The art or science of healing diseases by the administration of internal remedies."

In Schmidt's Attorney's Dictionary of Medicine, the word "medicine" is defined as: "A substance taken internally or applied externally to the surface in the treatment of disease."

The affidavits of the two medical doctors, and all the other evidence presented was to the effect that the medicines prescribed by Dr. Wilton were proper under the circumstances for treatment of local ailments of the human foot.

We do not think it can be reasonably concluded that the legislature, having authorized podiatrist to perform limited surgery on the human foot, did not intend that a podiatrist could not prescribe medicine to discourage infection, to abate swelling, and to alleviate pain resulting from treatment of the local disease of the foot, whether such medicine be taken internally or applied externally.

We therefore affirm the findings and decree of the Chancellor in this aspect.

■ The Chancellor further found and decreed that since charges were first filed with the Board of Podiatry accusing Dr. Wilton of unlawfully prescribing medicine for internal use, the action of that Board in acquitting Dr. Wilton of the charge, became res adjudicata in an administrative sense of the later proceedings instituted against Dr. Wilton by the Board for the Healing Arts, and therefore the action of the Board for the Healing Arts revoking the license of Dr. Wilton was null and void.

From the record before us, and this was all that was before the Chancellor, we cannot determine that the charges against Dr. Wilton heard before the Board of Podiatry were the same as those with which the Board for the Healing Arts was possibly concerned. The minutes of the hearing of the charges before the Board of Podiatry merely show that the complaint brought against Dr. Wilton "pertained to the writing of medical prescriptions" and after consideration of the evidence, the Board of Podiatry found "that Dr. Wilton had not exceeded the lawful scope of his practice of Podiatry in griting (sic) the prescriptions. (See File Folder ASP.B 1969 #1 (P.D.W.))"

Section 257(20), Title 46, Code of Alabama 1940, gives to the Board for the Healing Arts the power and duty to enforce all regulatory laws *now* in force designed to prevent the unlawful practice of the healing arts, concurrent with the power vested in the branch boards authorized to enforce compliance with the various laws regulating the practice of the healing arts.

Counsel for the Board of Podiatry argues that since the above section confers regulatory powers in the Board for the Healing Arts "now in force," the Board for the Healing Arts has no regulatory power over podiatrists, the Board of Podiatry having been created subsequent to the enaction of Section 257(20).

Section 257(21), however, confers the power on the Board for the Healing Arts to suspend or revoke the license to practice *any* branch of the healing arts when the licensee is found guilty of certain offences set out in Section 257(21).

It would appear, therefore, that under our statutory program for regulation of the healing arts that under and by virtue of Section 257(21) the Board for the Healing Arts has concurrent jurisdiction with the various branch boards in regulating the various branches of the healing arts.

We are, therefore, not in accord with the reasons expressed by the Chancellor for decreeing that the action of the Board for the Healing Arts revoking the license of Dr. Wilton, was null and void because the order of the Board of Podiatry acquitting him of the charges heard by that Board was res adjudicata of the proceedings before the Board for the Healing Arts. The record is so meager in this respect that resort to speculation would have to be indulged to support the reason assigned.

We hasten to add, however, that the action of the lower court in holding null and void the order of the Board for the Healing Arts in revoking the license of Dr. Wilton was fully justified in that the letter sent by Mr. Benton to Dr. Wilton was insufficient to invoke jurisdiction of the Board for the Healing Arts to conduct the contemplated hearing. The letter merely stated that Dr. Wilton was to appear before the State Licensing Board on 20 November 1969 "to show cause why his license to practice chiropody should not be revoked, according to violation of Title 46–257, Section 21(9), Code of Alabama."

Section 257(21) empowers the Licensing Board for the Healing Arts to suspend or revoke the license of any licensee who should be found guilty of certain listed offenses. Sub-Section (9) thereunder lists as an offense: "Unlawful invasion of the field of practice of any profession where license is required by this article when the licensee is not licensed to practice such profession."

Overlooking the fact that the letter refers to Dr. Wilton's license to practice chiropody, rather than podiatry, the generality of the charge as set forth in Mr. Benton's letter to Dr. Wilton is so lacking in specificity as to fall short of the requirements of due process of law.

The right to a hearing embraces not only a right to present evidence, but also a reasonable notice of the claims or charges to be considered at the hearing. Dark's Dairy et al. v. Alabama Milk Control Board et al., 278 Ala. 693, 180 So.2d 527.

The decree of the lower court is due to be affirmed and it is so ordered.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL, and McCALL, JJ., concur.